IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16710

_____

D.C. Docket No. 4:16-cv-00143-HLM

JEFFREY BERNARD BEEMAN,

Petitioner - Appellant,

versus

UNITED STATES OF AMERICA,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before ED CARNES, Chief Judge, TJOFLAT, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JULIE CARNES[*], JILL PRYOR, NEWSOM and BRANCH, Circuit Judges.

---

[*]En banc polls are conducted of the "circuit judges of the circuit who are in regular active service" who are not disqualified. 28 U.S.C. § 46(c); Federal Rule of Appellate Procedure 35(a). At the time the poll was conducted in this case, Judge Julie Carnes was in regular active service and participated in it. She took senior status on June 18, 2018, which was after the poll had been completed.

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in active service having requested a poll on whether this case should be reheard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting a rehearing en banc, it is ORDERED that this case will not be reheard en banc.

JULIE CARNES, Circuit Judge, respecting the denial of rehearing en banc:

A majority of the Court has voted not to rehear en banc our decision in *Beeman v. United States*, 871 F.3d 1215 (11th Cir. 2017), in which the panel held that Beeman had failed to make the showing necessary to prevail on his 28 U.S.C. § 2255 motion for resentencing based on *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015). *Johnson* declared the residual clause of the Armed Career Criminal Act (ACCA) unconstitutionally vague, meaning that this clause cannot be used as the basis for imposing an enhanced sentence under the ACCA. As the movant, a § 2255 litigant has always been required to shoulder the burden of proving his claim. That being so, *Beeman* held that a § 2255 litigant who seeks to overturn his sentence on the ground that he was sentenced pursuant to the residual clause must actually prove that his sentence was based on that clause: a requirement that the panel majority thought to be rather obvious and unremarkable.

Dissenting as to the denial of en banc review of *Beeman*, Judge Martin, however, disagrees that a § 2255 litigant who raises a *Johnson* claim should be held to such a burden. Instead, our dissenting colleague seeks a new rule that would exempt *Johnson* § 2255 claimants from the standard that is applied to all other § 2255 litigants. As the author of the *Beeman* decision, I write in response to our dissenting colleague's assertion that *Beeman* was wrongly decided.

I.    Background

3

Following a search of his residence that uncovered, among other things, the presence of illegal drugs, drug paraphernalia, a rifle and pistol, and 31 rounds of ammunition, Jeffrey Beeman was convicted by a jury of cocaine possession with the intent to distribute and of being a felon in possession of a firearm and ammunition. The district court considered whether Beeman's sentence as to the firearm and ammunition charges should be enhanced pursuant to the ACCA: a statute that calls for a sentence of at least fifteen years for a defendant convicted of an applicable firearms offense who has at least three prior qualifying felony convictions for drug trafficking offenses and/or violent felonies. Beeman potentially had three such convictions: two prior drug trafficking convictions and a prior violent felony conviction. The latter was a conviction for aggravated assault under Georgia law after Beeman, armed with a shotgun, shot a person named Parrish Mitchell. The district court concluded that this aggravated assault conviction constituted a violent felony and that the prior drug trafficking convictions likewise qualified as ACCA-predicate crimes. The court therefore sentenced Beeman pursuant to the ACCA. Beeman offered no objection.

Beeman likewise did not appeal his sentence, which had been imposed in 2009, albeit he unsuccessfully appealed his conviction, which became final in 2010. Nevertheless, almost six years later, in 2016, he filed a § 2255 motion claiming that the district court had erred when it counted the aggravated assault

4

conviction as a violent felony and sentenced him pursuant to the ACCA. Accordingly, he asked that his ACCA-sentence be vacated.

The ACCA provides three ways by which a prior conviction can qualify as a violent felony, only two of which are relevant here:  the elements clause and the residual clause.  The elements clause defines as a violent felony a crime that has as an element the use, attempted use, or threatened use of physical force against the person of another.  18 U.S.C. § 924(e)(2)(B)(i).  The residual clause defines a violent felony as a crime that presents a serious potential risk of physical injury to another.  *Id.* § 924(e)(2)(B)(ii).  The presentence investigation report had recommended that a conviction for Georgia aggravated assault be considered a violent felony under the ACCA, but it did not specify on what clause or clauses that recommendation was based, nor did the district court so specify when it imposed sentence.

II.    Beeman's *Descamps* Claim is Untimely

As noted, only two of the three clauses defining a violent felony were potentially applicable to Beeman's aggravated assault conviction:  the elements clause and the residual clause.  Accordingly, in his § 2255 motion, Beeman raised two separate claims in an effort to knock out each clause as a viable basis for characterizing the aggravated assault conviction as a violent felony:  a *Descamps* claim challenging use of the elements clause and a *Johnson* claim challenging use

5

of the residual clause.  As to the former, he relied on the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013), in which the Supreme Court clarified, among other things, that the modified categorical approach cannot be used to classify a conviction as being for a violent felony if the underlying statute is indivisible.  Relying on the *Descamps* decision, which was issued subsequent to his sentencing, Beeman contended that the elements clause can now no longer support the characterization of his aggravated assault conviction as a violent felony.  From this proposition, he argued that any use by the district court of that clause when imposing his sentence was illegitimate, and thus his ACCA-sentence should be vacated.

Unfortunately for Beeman, his *Descamps* claim could not make it out of the starting gate because it was untimely.  Holding that Beeman's claim for relief under § 2255 was time-barred to the extent it sought relief pursuant to *Descamps*, the panel opinion explained that Beeman had filed his § 2255 motion over five years after his judgment of conviction became final—an event that typically triggers the start date for AEDPA's one-year limitations period.  *See Beeman*, 871 F.3d at 1220.  This default limitations period may, however, be restarted and extended for a one-year period of time when the movant asserts a right that "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2255(f)(3).  But *Descamps* "did not

6

announce a new rule." *Mays v. United States*, 817 F.3d 728, 734 (11th Cir. 2016) (explaining that *Descamps* "merely clarified existing precedent"). Moreover, even had it done so, Beeman did not file his § 2255 motion within one year of *Descamps*'s issuance in 2013.

In short, Beeman's *Descamps* claim being untimely, he cannot challenge in a § 2255 motion the validity of the elements clause as a basis for classifying his aggravated assault conviction as a violent felony.

III.    Beeman Failed to Prove His *Johnson* Claim

Without a timely *Descamps* claim, the only route to relief for Beeman was a successful *Johnson* claim. The panel opinion concluded that Beeman had asserted a timely *Johnson* claim by alleging that the residual clause was an improper basis for determining whether a putative predicate conviction constitutes a violent felony and by filing his § 2255 motion within one year after *Johnson*'s issuance. *Beeman*, 871 F.3d at 1220–21. Unlike *Descamps*, the *Johnson* decision meets both requirements necessary to invoke a renewed limitations period under § 2255(f)(3): (1) *Johnson* announced a new rule and (2) the Supreme Court made the rule retroactively applicable to cases on collateral review. *See Welch v. United States*, 578 U.S. __, __, 136 S. Ct. 1257, 1264–65, 1268 (2016).

Although Beeman properly asserted a *Johnson* claim, the panel opinion concluded that he ultimately failed to prove the central allegation of this claim:

7

that the residual clause adversely impacted his sentence, which is an essential element of this particular § 2255 claim. That lapse was fatal. *Beeman*, 871 F.3d at 1221. In so holding, the panel began with the unremarkable principle that a § 2255 movant bears the burden of proof and persuasion as to the claims asserted in his § 2255 motion. *Id.* at 1221–22. Well-established by a long line of precedent cited in the panel's decision, this principle protects finality interests that are "essential to the operation of our criminal justice system," *Teague v. Lane*, 489 U.S. 288, 309 (1989), and that are at the core of AEDPA. *See Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir. 2002) ("A fundamental purpose for the AEDPA was to establish finality in post-conviction proceedings.").

In the context of a *Johnson* claim, meeting the burden of proof necessary to warrant relief under § 2255 means showing, by a preponderance of the evidence, that the residual clause in fact adversely affected the movant's sentence. *See In re Thomas*, 823 F.3d 1345, 1348 (11th Cir. 2016). In order to do that, the movant must prove that—more likely than not—he was sentenced based solely on the residual clause. If the movant's sentence was based also, or instead, on the elements or the enumerated offenses clause (neither of which were called into question by *Johnson*), then one must necessarily conclude that the now-invalid residual clause did not adversely affect the sentence.

Beeman provided no evidence to meet his burden.  He offered no reason why one should infer that the district court based its conclusion that the Georgia aggravated assault conviction qualified as a violent felony on the residual clause. Certainly, nothing in the sentencing record indicates that the district court, addressing an aggravated assault conviction arising out of Beeman's shooting of another person, rejected—or even questioned—what would have appeared to be the obvious clause to use in first determining whether that conviction was a violent felony:  the elements clause, which clause requires that the underlying crime have as an element the use, attempted use, or threatened use of physical force against another person.[1]

Nor has Beeman shown that there is anything in the legal landscape in 2009 to suggest that the district court would have had any reason to doubt that the elements clause provided a sound basis for characterizing the aggravated assault conviction as a violent felony.  *See United States v. Washington*, 890 F.3d 891, 896 (10th Cir. 2018) (holding that a § 2255 movant bears the burden of proving that the sentencing court relied solely on the residual clause in order to succeed on a

---

[1]  Indeed, the district judge who denied Beeman's § 2255 motion is the same judge who sentenced him.  In the part of his opinion addressing the merits of Beeman's § 2255 motion, the judge indicated, as an alternative ground, that relief on the motion was not warranted because Georgia aggravated assault still qualifies as a violent felony under the elements clause of the ACCA, even under the more exacting analysis required by *Descamps* and its progeny.  Given this post-*Descamps* analysis by the judge, it is unlikely that he would have relied solely on the residual clause in finding that Beeman's Georgia aggravated assault conviction qualified as a violent felony when he sentenced Beeman pre-*Descamps* in 2009.

*Johnson* claim and noting that a reviewing court "can often determine whether the district court relied on the residual clause in sentencing by looking to 'the relevant background legal environment that existed at the time of [the defendant's] sentencing'" (alteration in original) (quoting *United States v. Snyder*, 871 F.3d 1122, 1130 (10th Cir. 2017))).

As to the legal landscape concerning a Georgia aggravated assault conviction at the time of Beeman's 2009 sentencing under the ACCA, if the law was clear at the time of Beeman's sentencing that only the residual clause would authorize a finding that his aggravated assault conviction was a violent felony, that circumstance would strongly indicate that an ACCA sentence based on such a conviction depended on the residual clause. Yet, Beeman has not cited, and the panel did not find, any caselaw in 2009 holding, otherwise making obvious, or even hinting that a Georgia aggravated assault conviction could qualify as a violent felony only under the residual clause.

In short, having offered no basis upon which to conclude that the district court counted the aggravated assault conviction as a violent felony based solely on the residual clause, Beeman clearly failed to shoulder his burden of proving that his sentence was adversely impacted by the residual clause. Having failed to carry his burden of proof on that claim, Beeman's *Johnson* claim necessarily had to be dismissed. *See Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("Where, as

10

here, the evidence does not clearly explain what happened . . . the party with the burden loses."); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005) (explaining that the term "burden of persuasion" means that the party with the burden "loses if the evidence is closely balanced").

IV.    Dissenting Colleague's Concerns

Our dissenting colleague focuses on what she views as the unfairness of the result generated by the *Beeman* decision.  Yet, she does not explain why the legal principles applied by the *Beeman* panel opinion are incorrect, nor does she engage the panel opinion's legal analysis.

Contrary to our dissenting colleague's characterization, the burden of proof and persuasion that governs a § 2255 motion is not an "administrative impediment" that we may disregard when we find it to be inconvenient.  *See* Judge Martin Dissent at 17.  Rather, and as the *Beeman* panel emphasized, "[t]he burden of proof and persuasion reflects longstanding and fundamental interests in finality."  *Beeman*, 871 F.3d at 1223.

Nor does the *Beeman* panel's decision improperly create too "narrow" a "path" for obtaining relief under *Johnson*, as our colleague suggests.  *See* Judge Martin Dissent at 23.  For sure, the panel decision requires a § 2255 movant asserting a *Johnson* claim to bear the same burden of proof and persuasion as any other § 2255 movant.  But the opinion does not limit the type of evidence that a

11

movant might seek to marshal. Indeed, there are numerous sources a movant might rely upon to meet this burden, including comments or findings by the sentencing judge, statements in the PSR, colloquy by counsel, concessions by the prosecutor, and caselaw in existence at the time of sentencing. *See Beeman*, 871 F.3d at 1224 n.4. As the panel explained, "[e]ach case must be judged on its own facts." *Id.* In this particular case, Beeman simply failed to show—by any of the methods suggested by the panel or by any other method[2]—that the sentencing court relied on the residual clause in applying the ACCA.

In determining whether a district court based its sentencing decision solely on the residual clause, our colleague would widen the path for a movant seeking *Johnson* relief by considering only whether a particular conviction would qualify today as an ACCA predicate under the enumerated offenses or the elements clause, given developments in the caselaw such as *Descamps. See* Judge Martin Dissent at 24. If current law would forbid the use of the enumerated offenses or the elements clause, according to our colleague's reasoning, one would have to infer that the sentencing court necessarily relied only on the residual clause when it applied the ACCA enhancement. *See id.*

---

[2] We noted in the panel opinion that the suggested methods of proof were just "a few examples" and that "there could be other circumstances on which a movant can rely" to prove he is entitled to relief under § 2255 pursuant to *Johnson*. *Beeman*, 871 F.3d at 1224 n.4.

12

Yet, simply as a matter of logic, this approach is flawed because evidence of what a judge is allowed to do under current law does not answer the question of what the judge actually did at the time of the sentencing.  To use this case as an example, even if we assume that it would be improper today, after the 2013 *Descamps* decision and its progeny, to find that a Georgia aggravated assault conviction qualifies as a violent felony under the elements clause, that conclusion does not mean that the district court in 2009 was clairvoyant and, anticipating future caselaw, that it would have eliminated the elements clause as the basis for its determination that aggravated assault is a violent felony, instead defaulting to the residual clause.

But more fundamentally, our dissenting colleague's approach would let Beeman's untimely claim for relief under *Descamps* in through the backdoor, thereby entirely neutering a ruling that any such claim is clearly barred by AEDPA's statute of limitations.  Our colleague suggests that the panel somehow "ignored" *Descamps* by adhering to this statute of limitations ruling.[3]  Judge

---

[3]  Our colleague also argues that the panel's statute of limitations ruling conflicts with our own precedent in *Mays v. United States*, 817 F.3d 728 (11th Cir. 2016).  That is not so.  The movant in *Mays* raised a claim to relief based on both *Descamps* and *Johnson* but, significantly, the timeliness of the *Descamps* claim was not at issue because the Government waived its statute of limitations defense.  *Id.* at 732–33.  Rather, the only question presented for decision in *Mays* was whether *Descamps* and *Johnson* applied retroactively in the post-conviction context.  *Id.*  *Mays* answered in the affirmative: a conclusion we readily accept.  *See id.* at 733–34.  The *Mays* court, however, did not confront—and made clear that it could not decide—a case in which the *Descamps* claim was untimely.  *Beeman* did.  Nothing in *Mays* considered or reached any

Martin Dissent at 24. To the contrary, the panel acknowledged *Descamps*, as well as its retroactive application to cases on collateral review. *See Beeman*, 871 F.3d at 1219. But the fact that a particular legal principle is to be given retroactive effect does not necessarily mean that a claim based on that legal principle will be timely under AEDPA. As the panel opinion explained, *Descamps* does not reset AEDPA's statute of limitations pursuant to § 2255(f)(3), because *Descamps* does not set forth a "newly recognized" right. *Id.* at 1220. Further, Beeman filed his motion more than a year after *Descamps* was issued. In short, Beeman should not be allowed to obtain relief under § 2255 based on a purported *Johnson* claim that is nothing more than a thinly-disguised and untimely *Descamps* claim.

Essentially, what our colleague is advocating for in her dissent is that the burden of proof and persuasion that ordinarily applies to a § 2255 motion be relaxed when it comes to *Johnson* claims to ensure that more *Johnson* movants prevail on their claims. In support of her position, our colleague notes that sentencing courts have never been required to say, and as a result have not always expressly stated, which of the ACCA's clauses they are relying on when finding that a conviction qualifies as a violent felony. *See* Judge Martin Dissent at 27. As a result, our colleague argues, if we treat *Johnson* movants like every other § 2255

_____

conclusion that, in deciding the merits of a stand-alone *Johnson* claim, the habeas court must also reach out to make sure that the sentencing court complied with *Descamps*.

14

movant, and require them to shoulder their burden of proof, it is unlikely that many of these prisoners will succeed in showing they are due relief.

Even accepting Judge Martin's factual premise about what sentencing records typically show or do not show, our panel opinion rejected her legal premise that the burden of proof should be overhauled for the purpose of increasing the number of cases in which a movant prevails. The burden of proof reflects longstanding and fundamental interests in finality. It is by application of the appropriate burden that the outcome of a case is supposed to be determined, not the other way around. This approach is as true with *Johnson* as with any other type of claim. A § 2255 petitioner is not exempt from the requirement that he prove his sentence was imposed contrary to the Constitution simply because he has pled a *Johnson* claim.

For all of the above reasons, I remain convinced that the *Beeman* panel got the law right. To obtain relief on a *Johnson* claim, a § 2255 movant must prove by a preponderance of the evidence that that the residual clause in fact adversely impacted his sentence. The movant cannot meet this burden by showing only that his qualifying convictions do not satisfy the elements clause or the enumerated offenses clause under the law as it stands today, because such a showing does not demonstrate that the sentencing court in fact relied on the residual clause when it imposed sentence. Rather, the movant must point to evidence in the record or to

15

caselaw in existence at the time of the sentencing sufficient to show that—more likely than not—the sentencing court based its imposition of an ACCA-sentence on the residual clause.  *Beeman* was true to applicable and long-standing legal principles, and I submit that it was correctly decided.

MARTIN, Circuit Judge, with whom JILL PRYOR, Circuit Judge joins, dissenting from the denial of rehearing en banc:

Jeffrey Bernard Beeman is serving a seventeen and one-half year term of imprisonment. His sentence was made longer because he was sentenced under the Armed Career Criminal Act ("ACCA"), a statute intended to impose harsher sentences on criminal defendants who committed violent felonies in the past. Since he was sentenced, the law defining what constitutes a "violent felony" has changed. Indeed, the U.S. Supreme Court invalidated part of the statute that had been the basis for his longer sentence, Johnson v. United States, 576 U.S. __, 135 S. Ct. 2551 (2015). As a result, Mr. Beeman filed this action seeking to have his sentence vacated. He points out that a person with a background identical to his would get a significantly shorter sentence if sentenced today. However, the panel of this court that ruled on Mr. Beeman's appeal imposed administrative impediments, such that he can get no review of his sentence. Those impediments are not derived from the statute or Eleventh Circuit or Supreme Court precedent, and they bar relief for prisoners serving sentences that could not properly be imposed under current law. I hoped the majority of this Court would vacate the Beeman panel opinion, and I dissent from their decision to let it stand.

The panel opinion in Mr. Beeman's case allows him no relief unless he can point to something from the transcript of his 2009 sentencing hearing that proves

17

his longer sentence was based on the part of the statute, the residual clause, which was invalidated by the Supreme Court. Of course, at the time of Mr. Beeman's sentencing hearing, no one who was there had any idea that the Armed Career Criminal Act would, six years later, be partly invalidated by the Supreme Court. Thus, the question presented by Mr. Beeman's case is what opportunity, if any, do we give him (and many others like him) to have his sentence reevaluated now that the Supreme Court has recognized his sentence was imposed under a statute that was, in part, unconstitutional.

In her opinion respecting the denial of en banc review, Judge Julie Carnes says I "disagree" that litigants seeking habeas relief should be required to bear the burden of proving their case. Judge Carnes Op. at 3. Not so. The burden belongs squarely on Mr. Beeman. My argument is that he has carried his burden.

Mr. Beeman came forward with proof that his sentence must have been based on the residual clause. That is, it can't possibly be based on the other clauses in ACCA's definition of "violent felony." This Court has previously relied on precisely this type of process of elimination. See In re Chance, 831 F.3d 1335, 1339–41 (11th Cir. 2016); In re Rogers, 825 F.3d 1335, 1339 (11th Cir. 2016) (per curiam). Other circuits have as well. See United States v. Geozos, 870 F.3d 890, 896 (9th Cir. 2017); United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017). And Mr. Beeman is right when he tells us that his 1990 conviction in Georgia for

18

aggravated assault is not an ACCA predicate offense under the enumerated offenses clause, one of the two surviving definitions of violent felony. Beyond that, and although this Court has not yet decided the issue, Mr. Beeman explains why his 1990 Georgia aggravated assault conviction cannot qualify as a violent felony under the last remaining definition either. This means the now defunct residual clause provided the only basis for designating Mr. Beeman's aggravated assault conviction as a violent felony.

U.S. District Judge Kathleen Williams, sitting by designation with this court, dissented from the Beeman panel opinion, and explained well the reasons why the panel opinion was wrongly decided. I agree with what she said, and add my thoughts here.

## I. BACKGROUND

### A.

In 2009 Mr. Beeman was sentenced to a 210-month term of imprisonment after he was convicted for being a felon in possession of a firearm. Beeman v. United States, 871 F.3d 1215, 1217 (11th Cir. 2017). His ACCA sentence is based on two Georgia convictions for possession of cocaine with intent to distribute and one Georgia conviction for aggravated assault. Id. at 1218.

A felon-in-possession conviction carries a sentence of no more than ten years. 18 U.S.C. § 924(a)(2). ACCA adds a requirement for a sentence of no less

than fifteen years for any felon in possession of a firearm who has been convicted of three or more crimes that meet the definition of a "violent felony" or a "serious drug offense." Id. § 924(e)(1). The statute gives three definitions of what can constitute a "violent felony." The first is known as the "elements clause," which includes any crime that "has an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 924(e)(2)(B)(i). The second is the "enumerated offenses clause," which includes "burglary, arson, or extortion" and crimes that "involve[] use of explosives." Id. § 924(e)(2)(B)(ii). The third is known as the "residual clause," and it says violent felonies include crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id.

On June 26, 2015, the Supreme Court ruled the residual clause of ACCA was so vague that it could not serve as a constitutional basis for making a person's sentence longer. Johnson, 135 S. Ct. at 2563. The Supreme Court later held that Johnson's ruling should be given effect in cases where defendants were sentenced under the residual clause before Johnson was decided. Welch v United States, 518 U.S. ___, 136 S. Ct. 1257, 1268 (2016). That being so, on June 7, 2016, Mr. Beeman filed a motion to vacate his sentence under 28 U.S.C. § 2255. Beeman, 871 F.3d at 1218. He argued that, after Johnson, his Georgia conviction for aggravated assault no longer qualified as an ACCA predicate offense. Id.

20

Generally, he argued that a Georgia conviction for aggravated assault was not an enumerated offense; could not now be supported by the defunct residual clause; and did not qualify under the elements clause. Id.

The District Court found Mr. Beeman's motion was not based on Johnson, but actually relied on Descamps v United States, 570 U.S. 254, 133 S. Ct. 2276 (2013). Beeman v. United States, No. 4:08-CR-038-01-HLM-WEJ, No. 4:16-CV-00143-HLM, 2016 WL 10571891, at *2 (N.D. Ga. Oct. 12, 2016). With this reasoning, it denied the § 2255 motion as untimely. Id. (citing 28 U.S.C. § 2255(f)). Mr. Beeman appealed.

**B.**

The panel characterized Mr. Beeman's motion as raising both a "Johnson claim and a Descamps claim."[1] Beeman, 871 F.3d at 1220. The panel said because Descamps did not state a new rule, a Descamps claim would not trigger the one-year limitations provision of 28 U.S.C. § 2255(f)(3), while a claim based on Johnson would. Id. at 1219–20. To distinguish between the two, the panel explained that "[a] Johnson claim contends that the defendant was sentenced as an armed career criminal under the residual clause, while a Descamps claim asserts

---

[1] The Supreme Court did not create a new type of claim in Descamps. Instead, Descamps reiterated a framework the Supreme Court already instructed us to use to evaluate the criminal history of people being sentenced in federal court. See Descamps, 570 U.S. at 260, 263, 133 S. Ct. at 2283, 2285 (noting that prior caselaw "all but resolves this case" and that the Court was merely applying the modified-categorical approach in "the only way we have ever allowed"). More discussion on this subject will follow.

21

that the defendant was incorrectly sentenced . . . under [the other] clause[s]." Id. at 1220. The panel recognized that Mr. Beeman raised a timely Johnson claim because he argued that his offense "historically qualified as an ACCA predicate under the ACCA's residual clause," and because he filed his motion just before the one-year anniversary of the Johnson decision. Id. at 1220–21 (quotation omitted and alteration adopted).

Having decided Mr. Beeman's motion was timely, the panel then considered the merits of his "Johnson claim." Id. at 1221. But the panel rejected Mr. Beeman's effort to show that his aggravated assault conviction did not qualify as a violent felony under either ACCA's elements clause or its enumerated offenses clause. Instead the panel said he was entitled to no relief because he could not affirmatively prove that the sentencing court relied "solely on the residual clause" when it imposed sentence on Mr. Beeman in 2009. Id. In creating this standard, the panel required Mr. Beeman to prove this "historical fact," using only his 2009 sentencing record and legal precedent that predated that sentence. Id. at 1224 n.5. The panel said this test—the "historical-fact test"—was necessary to preserve the appropriate burden placed on § 2255 petitioners. Id. at 1221–24. Once the panel applied this historical-fact test to Mr. Beeman's case, it denied his claim. Id. at 1224–25.

## II. DISCUSSION

### A.

How does a prisoner in the Eleventh Circuit get the benefit of a claim based on Johnson? The Beeman panel opinion created a very narrow path. Now a petitioner must show through affirmative record evidence—or precedent that was binding at the time of his sentencing—that the sentencing court gave him a longer sentence based only on the residual clause. Id. at 1221–22, 1224 n.5. But we know there are other ways to prove a Johnson claim. For example, if a person serving an ACCA sentence can show that his prior conviction could not qualify as a "violent felony" under either the enumerated offenses or the elements clauses of ACCA, the prior conviction must have been deemed a violent felony under the residual clause.

Here, the opinion respecting the denial of en banc review suggests that accepting this type of proof about how a particular sentence was imposed equals relieving a litigant of the burden of proving he's entitled to relief. Judge Carnes Op. at 14–15. But again, I have merely articulated the method by which Mr. Beeman has carried his burden. Certainly, the only other circuits to have considered this question at the time Beeman was decided accepted this same

method of proof relied on by Mr. Beeman.  See Geozos, 870 F.3d at 896; Winston, 850 F.3d at 682.[2]

This approach is reliable because our method for analyzing whether a conviction qualifies as a "violent felony" under the enumerated offenses and elements clauses has remained unchanged.  Descamps reiterated that courts must apply the categorical approach to analyzing ACCA predicates, or, in certain limited circumstances, use a modified-categorical approach.  Descamps, 570 U.S. at 257, 133 S. Ct. at 2281; see also Mays v. United States, 817 F.3d 728, 734 (11th Cir. 2016) (per curiam) ("Descamps did not announce a new rule—its holding merely clarified existing precedent.").  So if you can show that a conviction does not meet the definition of a "violent felony" under the elements or enumerated offenses clauses, this is affirmative proof that the sentence was based on the now-defunct residual clause.

The panel rejected this approach, and in doing so ignored Descamps.[3]  The panel recognized that Descamps must be applied retroactively on collateral review,

---

[2] Since Beeman was decided, other courts have adopted the Beeman panel's method, see United States v. Washington, 890 F.3d 891, 896 (10th Cir. 2018), Potter v. United States, 887 F.3d 785, 788 (6th Cir. 2018), Dimott v. United States, 881 F.3d 232, 240 (1st Cir. 2018), while the Fifth Circuit declined to adopt it, see United States v. Taylor, 873 F.3d 476, 481–82 (5th Cir. 2017).  The circuits are therefore split on this question.

[3] The panel opinion also ignored our own Circuit precedent from Mays.  Courtney Mays, like Mr. Beeman, challenged his ACCA sentence, arguing his earlier conviction for third-degree burglary in Alabama no longer qualified as an ACCA predicate.  Mays, 817 F.3d at 731–32.  The Mays panel evaluated Mr. Mays's criminal history, using the Descamps methodology, and held that his third-degree burglary conviction did not qualify as a violent felony under either the

Beeman, 871 F.3d at 1219–20, but then refused to apply it as a part of the merits analysis, saying Mr. Beeman was "untimely" in asserting it, id. at 1220. But again, the Supreme Court opinion in Descamps instructed courts on how to analyze a person's prior convictions to determine whether they meet the definition of a "violent felony" under ACCA. Every defendant is entitled to have the federal courts evaluate his sentence under the Descamps methodology, whether now or in the past, and whether in this Circuit or another. Descamps is binding Supreme Court precedent. The panel opinion made a mistake in ignoring it.

To the extent the panel's designation of Mr. Beeman's Descamps claim as "untimely" indicates a worry about a flood of untimely petitions, Mr. Beeman's claim was timely. His claim is that Johnson means he no longer qualifies for an ACCA sentence, and AEDPA gives him one year from the date of that decision to make that claim. See 28 U.S.C. § 2255(f)(3). He met this deadline. The time

_____

enumerated offenses clause or the elements clause, and recognized that the residual clause could no longer be a basis for counting this conviction. Id. at 733–34. Based on this record, the Mays panel vacated Mr. Mays's sentence, and remanded him to be resentenced "without the § 924(e)(1) enhancement." Id. at 737. Under Beeman's "historical-fact test," Mr. Mays would not qualify for resentencing because our Court would be required to stand by the mistakes made by the District Court when it counted his third-degree burglary conviction as a violent felony and imposed the ACCA sentence. Thus, Mr. Mays would be serving a sentence based on this third-degree burglary conviction, even though this Court's post-Descamps evaluation of this crime taught us it did not meet the definition of a violent felony under ACCA. See United States v. Howard, 742 F.3d 1334, 1344–45 (11th Cir. 2014) (overturning United States v. Rainer, 616 F.3d 1212 (11th Cir. 2010)).

25

limits set by 28 U.S.C. § 2255(f) work well enough.[4]  It is not the role of the courts

to graft an additional test onto the merits analysis to keep out otherwise timely

petitions.

It is important to examine what exactly is being rejected when this Court

refuses to apply Descamps to a § 2255 claim.  Mr. Beeman would like the

opportunity to prove that his sentence was not based on the elements clause.  But

the panel is interested only in how the sentencing court understood ACCA in 2009.

As Descamps explains, the rules for evaluating predicate offenses—other than

under the residual clause—are the same today as they always have been.

Descamps, 570 U.S. at 260, 263, 133 S. Ct. at 2283, 2285.  If the sentencing court

analyzed the elements clause in a different way, the court was wrong.[5]  And the

---

[4] The opinion supporting the denial of rehearing en banc says it would "neuter[]" the statutory time limit to allow any discussion of Descamps "in through the backdoor."  Judge Carnes Op. at 13.  In my view, all I am trying to do is follow Supreme Court precedent. Descamps didn't just tell us whether a conviction under a particular state-statute qualified as an ACCA predicate offense.  It discussed the methodology a court must employ to analyze such questions.  See Descamps, 570 U.S. at 257–58, 133 S. Ct. at 2281–82.  And the Supreme Court reminded lower courts this was the same standard that had always applied.  See id. at 260, 263, 133 S. Ct. at 2283, 2285.  By applying Descamps to all § 2255 challenges, a court is playing by the rules.  Nothing about that constitutes sneaking something "in through the backdoor" of a § 2255 petition.

[5] Judge Julie Carnes asserts a judge would have had to be "clairvoyant" in 2009 to interpret ACCA consistently with Descamps.  See Judge Carnes Op. at 13.  But given that Descamps merely reiterated the same standard that had always been used to interpret ACCA, every judge in 2009 should have already been applying that standard.  See United States v. Sneed, 600 F.3d 1326, 1330–33 (11th Cir. 2010) (discussing application of the modified categorical approach following the Supreme Court's 2005 decision in Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005)); see also, e.g., United States v. Robinson, 583 F.3d 1292, 1295–96 (11th Cir. 2009) (per curiam) (applying categorical approach consistent with Shepard); United States v. Burge, 407 F.3d 1183, 1187 (11th Cir. 2005) (same).

26

Beeman panel opinion binds all members of this Court to recreate and leave in place the misunderstandings of law that happened at sentencing. Ignoring for a moment that we must apply Supreme Court precedent, what is the value in binding ourselves to erroneous decisions?

We also know that Beeman's historical-fact test raises very real practical concerns. Most pre-Johnson sentencing records don't specify reliance on the residual clause because "[n]othing in the law requires a judge to specify which clause of [ACCA] . . . it relied upon in imposing a sentence." Chance, 831 F.3d at 1340. A § 2255 claim under the Beeman rule thus now turns on whether the sentencing court happened to utter superfluous commentary at sentencing. This Court plainly identified this problem in Chance, which discussed two hypothetical defendants who were "sentenced on the same day, for the same offense, by the same judge, with the same ACCA predicates." Beeman, 871 F.3d at 1228–29 (Williams, J., dissenting) (citing Chance, 831 F.3d at 1341). The hypothetical judge specified for one defendant that the sentence was based on the residual clause, but was silent about the other. Id. Under the historical-fact test, one of those defendants gets relief and the other does not. And the resulting disparity means courts fall short in imposing like punishments on like wrongdoers.

In short, Mr. Beeman's method of proving his claim—showing that his sentence could not possibly be based on the elements clause or enumerated

offenses clause—is rational, supported in law, embraced by this circuit and others, and a proper allocation of the burden for a § 2255 petitioner.  It was error for the panel to reject it by creating a new test.

**B.**

Under a proper analysis, Mr. Beeman has a good argument that he should not have received an ACCA sentence, even at the time his sentence was imposed.

At the time of his 1990 conviction, a person could be convicted of aggravated assault in Georgia for using a dangerous object to put another person in "reasonable apprehension" of an immediate violent injury.  See O.C.G.A. §§ 16-5-20(a), 16-5-21(a) (1990); Rhodes v. State, 359 S.E.2d 670, 672 (Ga. 1987).  As Georgia courts have explained, "reasonable apprehension" is determined based solely on the victim's viewpoint, without regard to the defendant's intent. Dunagan v. State, 502 S.E.2d 726, 730 (Ga. 1998) ("[A]n assault under [O.C.G.A. § 16-5-20(a)(2)] looks to the victim's state of mind, rather than the accused's, to establish the elements of an assault."), overruled on other grounds by Parker v. State, 507 S.E.2d 744, 747 (Ga. 1998); see also Patterson v. State, 789 S.E.2d 175, 177 (Ga. 2016) (affirming reliance on Dunagan).  There need not be any intent to actually injure the victim, or even intent to place the victim in apprehension of an

28

injury.[6]  See Adsitt v. State, 282 S.E.2d 305, 307–08 (Ga. 1981); Collins v. State,

405 S.E.2d 892, 893 (Ga. Ct. App. 1991); see also Newby v. State, 791 S.E.2d 92,

96 (Ga. Ct. App. 2016).  There also need not be any actual physical contact.

Anderson v. State, 317 S.E.2d 877, 878 (Ga. Ct. App. 1984) ("Physical contact is

required for a simple battery but not for aggravated assault . . . .").

Generally, offenses must require knowing or intentional conduct to qualify

as a violent felony.  See Begay v. United States, 553 U.S. 137, 144–45, 128 S. Ct.

1581, 1586 (2008) (holding that strict liability or negligence crimes only qualify as

ACCA predicates when they involve "purposeful, violent, and aggressive"

conduct), abrogated on other grounds by Johnson, 135 S. Ct. at 2563; Leocal v.

Ashcroft, 543 U.S. 1, 5, 9–10, 125 S. Ct. 377, 380, 382 (2004) (holding that a DUI

offense did not have "as an element the use, attempted use, or threatened use of

physical force against the person or property of another" under the "crime of

violence" definition of 18 U.S.C. § 16 because it could be committed negligently

or accidentally).  When a state crime sweeps broader than ACCA's definitions, that

---

[6] This distinguishes O.C.G.A. § 16-5-21 from aggravated assault under Florida law, which we have held qualifies as an ACCA predicate because it requires "an intentional, unlawful threat by word or act to do violence to the person of another."  Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1337–38 (11th Cir. 2013) (emphasis added), abrogated on other grounds by Johnson, 135 S. Ct. at 2563; see also United States v. Golden, 854 F.3d 1256, 1256–57 (11th Cir. 2017) (per curiam) (explaining that Turner's holding remained binding post-Johnson); id. at 1257 (Jill Pryor, J., concurring in result).

crime cannot categorically qualify as an ACCA predicate. See Taylor v. United States, 495 U.S. 575, 599–600, 110 S. Ct. 2143, 2158–59 (1990).

Mr. Beeman has a good argument that a Georgia conviction for aggravated assault did not require the type of intent necessary for it to serve as an ACCA predicate offense. He should have been given an opportunity to present that argument in court.

### III.  CONCLUSION

The Supreme Court recently reminded us of our crucial duty to "exhibit regard for fundamental rights and respect for prisoners as people." Rosales-Mireles v. United States, 585 U.S. ___, 138 S. Ct. 1897, 1907 (2018) (quotation omitted). This duty encompasses thorough review of sentences we now know are longer than the law permitted, because "[t]o a prisoner, th[e] prospect of additional time behind bars is not some theoretical or mathematical concept[;] . . . [it] has exceptionally severe consequences for the incarcerated individual and for society which bears the direct and indirect costs of incarceration." Id. (quotations omitted and alterations adopted). When considering claims like Mr. Beeman's, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" Id. at 1908 (quotation omitted).

Mr. Beeman was sentenced in 2009.  With a ten-year maximum sentence, he could be nearing his release date.  Instead, he will spend another seven-and-a-half more years behind bars.  And not only does this Court sanction his unconstitutional sentence, we will prevent him—and many other prisoners like him—from arguing the full merits of his case in court.  Our Court is now daily presented with pleadings from prisoners who are barred from our Court because of the rule created in the <u>Beeman</u> panel opinion.  In my view, it is the role of the courts to hear these claims.  I therefore register my dissent about this court's failure to do so.